**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **TONYA JACKSON-HALL** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **1:06-cv-534-LG-JMR** |
| | § | |
| **GULFPORT SCHOOL DISTRICT** | § | **DEFENDANT** |

**<u>MEMORANDUM OPINION AND ORDER  GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

BEFORE THIS COURT is the Motion of the Gulfport School District for Summary Judgment [24], filed May 22, 2007.  The Court has considered the parties' briefs, the record, and the relevant legal authority.  The motion is granted in part and denied in part.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

During the 2002-2003 school year, Tonya Jackson-Hall, an African American, was employed by the District as Anniston Elementary Assistant Principal.  Principal Glen East was her supervisor.  She filed a race discrimination claim against the District with the Equal Employment Opportunity Commission ("EEOC").  The parties settled on February 11, 2003.  As a result, she was transferred to the District's Central Office as a supervisor of curriculum and instruction.  Additionally, the District removed from her personnel file letters of reprimand from East.

On January 3, 2005, East became Superintendent of the District.  He recommended, and the District approved, a "reduction in force."  It eliminated all positions below Assistant Superintendent within the Central Office, including Jackson-Hall.  In place of the five positions eliminated, the District created six.  The reduction plan also eliminated the dual principal system at the middle schools.

On March 30, East informed Jackson-Hall that her contract would not be renewed for the upcoming school year.  He provided her with a list of job openings in the District.  She applied and interviewed for two of those jobs but was not hired.  She later applied for principals of  West and Bayou View Elementary.  Again, she was not selected.

Jackson-Hall initiated this action with the EEOC.  The EEOC dismissed her case and issued a right to sue letter.  Subsequently, she filed her complaint with this Court and alleged, *inter alia*, that she was non-renewed and not rehired because of her race, gender, and EEOC settlement.  She also claimed the District breached the settlement agreement.  The District now moves for summary judgment and argues there is no evidence of (1) a right to sue letter from the Attorney General, (2) a prima facie case of discrimination, (3) pretext, (4) retaliation, and (5) breach of the settlement agreement.

## DISCUSSION

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  To make this determination, the Court must view the evidence in the light most favorable to the non-moving party.  *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005).  A "material fact" is one that might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*  The party that bears the

burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

IS JACKSON-HALL REQUIRED TO OBTAIN A RIGHT TO SUE LETTER FROM THE ATTORNEY GENERAL?

The District first argues that the case should be dismissed for Jackson-Hall's failure to obtain a right to sue letter from the Attorney General. Jackson-Hall responds her right to sue letter from the EEOC suffices, because it dismissed her claim.

The statute that outlines the procedural requirements for a Title VII claim has sparked some debate among the circuits in cases where the defendant is a political subdivision. *Hendrix v. Mem'l Hosp. of Galveston County*, 776 F.2d 1255, 1256 (5th Cir. 1985). *See also*, *Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Comm'n*, 327 F.3d 1247, 1250 (10th Cir. 2003). Specifically, one portion states, "If the Commission determines . . . that there is not reasonable cause to believe the charge is true, it shall dismiss the charge and promptly notify" the claimant. 42 U.S.C. § 2000e-5(b). Where the EEOC finds reasonable cause, it forwards the case to the Attorney General. *Id.* However, a later subsection states, where the EEOC dismisses a charge against a political subdivision, the Attorney General shall notify the claimant. 42 U.S.C. § 2000e-5(f). The Fifth Circuit has interpreted this statute to require the Attorney General to issue the right to sue letter whether the EEOC dismisses the action

3

or not.  *Hendrix*, 776 F.2d at 1256-57.  In doing so, the court noted that "at the time" the EEOC's regulations "expressly provided that [the] Attorney General would issue the notices of right to sue."  *Id.* at 1256.  The court explained, "A subsequent 1980 amendment to this provision [29 C.F.R. §1601.28(d)], which has been the subject of dispute . . . is fortunately not before us."  *Id.* at n.1.  Further, "Whether or not appellant could have filed suit before she received the letter from the Justice Department is not at issue here."  *Id.* at 1257.

The amendment to which the *Hendrix* court referred now specifies that when the EEOC dismisses a claim against a political subdivision, the EEOC, and not the Attorney General, issues the right to sue letter.  29 C.F.R. §1601.28(d).  The Fifth Circuit has not yet addressed the effect, if any, of this amendment on its interpretation of Section 2000e-5.  Thus, while Jackson-Hall complied with the EEOC's regulations, it is an open question as to whether she likewise complied with the statute.

However, whether the wrong agency issued the letter is not dispositive in this case.  This is because the right to sue letter is not a jurisdictional requirement.  *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (5th Cir. 1982).  Likewise, the requirement that it be issued by the Attorney General rather than the EEOC is non-jurisdictional.  *Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084, 1094 n.13 (5th Cir. 1981).  *See also*, *Solomon v. Hardison*, 746 F.2d 699, 701 (11th Cir. 1984).  It is subject to waiver, modification and estoppel.  *Id.*

One such instance of equitable modification is where the plaintiff subsequently receives the right to sue letter.  *Pinkard*, 678 F.2d at 1218.  For example, in *Clanton*, one of the plaintiff school teachers received her right to sue letter from the EEOC rather than the Attorney General.  *Clanton*, 649 F.2d at 1094 n.13.  The court rejected the Board's

contention that this deprived the court of jurisdiction. *Id.* The court held, "Whatever the merits of this contention, the fact that the wrong agency issued the initial right to sue letter is not dispositive, for [subsequently, all plaintiffs] received right to sue letters from the Attorney General, and under established law, this . . . cured any defect." *Id.*

Other circuits have found equitable waiver where the Attorney General refused to issue the right to sue letter. *Hiller*, 327 F.3d at 1252; *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1525 (11th Cir. 1983). In fact, the Tenth Circuit reversed summary judgment even though there was no evidence of the Attorney General's refusal before the district court. *Hiller*, 327 F.3d at 1251. The court noted "it would work an injustice on Ms. Hiller to deprive her of a remedy for failure to meet a non-jurisdictional requirement that is beyond her control." *Id.* at 1252. The Attorney General's notice of a right to sue would only echo the EEOC's dismissal. *Id.* Further, the court deemed it futile for a plaintiff to request a letter from the Attorney General, because such a request is routinely denied pursuant to Regulation 1601.28(d). *Id.* (citations omitted). *See also*, *Solomon*, 746 F.2d at 702; *Fouche*, 713 F.2d at 1525. Because the discrepancy between the statute and regulation create a "catch-22," the court granted equitable relief and reinstated Hiller's claim. *Hiller*, 327 F.3d at 1252.

Similarly, the Fourth Circuit waived the requirement that the Attorney General issue the right to sue letter where the EEOC issued it instead. *Moore v. City of Charlotte, N.C.*, 754 F.2d 1100, 1104 n.1 (4th Cir. 1985). The court reasoned, "Entitlement to the letter, without actual receipt of it, is sufficient to support federal jurisdiction." *Id.* The claimant's "entitlement is unaffected by any EEOC assumption of Justice Department duties, as [the

claimant] may not be penalized for an EEOC failure to fulfill its statutory duties." *Id.*

Consistent with *Clanton*, *Hiller*, and *Moore*, the Court finds that it has jurisdiction over the instant claims. It is undisputed that the EEOC dismissed Jackson-Hall's claims and issued a right to sue letter. In reliance on this and Regulation 1601.28(d), she has pursued her claim for over a year in federal court. It would be inequitable to insist she pursue a procedural requirement that, right or wrong, the EEOC and Department of Justice do not recognize.

<u>DID THE DISTRICT ENGAGE IN DISPARATE TREATMENT WHEN IT NON-RENEWED AND FAILED TO REHIRE JACKSON-HALL?</u>

Jackson-Hall claims disparate treatment in nonrenewal, failure to hire, and denial of the opportunity to apply for Administrative Assistant. She likewise claims disparate impact in the nonrenewal. Under this issue, the District argues only for summary judgment on the claims of disparate treatment in nonrenewal and failure to hire. The District argues that Jackson-Hall cannot satisfy her prima facie case in either instance. In the alternative, the District asserts that there is no evidence of pretext.

    I.    <u>NONRENEWAL</u>

Jackson-Hall may prove her discrimination claim with circumstantial evidence. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005). To establish her prima facie case of discriminatory discharge, she must prove: (1) she is a member of a protected class, (2) she was qualified for the position held, (3) she was fired, and (4) was either replaced by someone outside of her protected class, or treated less favorably than similarly situated employees outside of her protected class. *Id.*

The District concedes the first three elements are established. It maintains the case fails on the fourth prong. Jackson-Hall points to Tim Bellipanni, former co-principal at Bayou View Middle School, as a more favorably treated comparator.

First, the fourth element may also be proven by showing Jackson-Hall was replaced by someone outside her protected class. *Id.* The District does not argue the absence of a genuine issue of fact on this question. This may be because Jackson-Hall's position was eliminated altogether. In place of the two supervisors of curriculum and instruction (Jackson-Hall and another African American female), the District created three curriculum specialists. The positions were filled by two Caucasian women and an African American woman.

Secondly, there is a genuine issue of fact as to whether Jackson-Hall was treated less favorably than similarly situated non-protected employees. To begin with, the parties disagree about which employees are "similarly situated." The District maintains that only the certified employees at the Central Office are the comparators. Jackson-Hall expands this to certified administrators outside of the Central Office, including Bellipanni.

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). *See also*, *Perez v. Tex. Dep't of Crim. J., Institutional Div.*, 395 F.3d 206, 214-15 (5th Cir. 2004) (discussing jury question as to whether plaintiff's proffered comparators were similarly situated). Jackson-Hall must show that non-African American and/or male employees were treated better "under circumstances nearly identical" to hers. *Id.* at 210; *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

There is evidence that Bellipanni's circumstances were nearly identical. Both he and Jackson-Hall were certified administrators, within the District, whose positions were subject to elimination via the 2005 "reduction in force." Finally, there is evidence that he was treated more favorably. She was non-renewed, directed to reapply for certain posted positions, and had to be interviewed by committee. According to Joel Myrick, principal of Gulfport High, East created a position for Bellipanni at Gulfport High and transferred him to this position. Myrick asserts this was in violation of the District's hiring procedures, because the procedures required the position to be posted and Myrick to conduct interviews. Instead, the position was not posted, and Myrick was instructed to hire Bellipanni without an interview. Additionally, Bellipanni's February 22, 2005 letter to East corroborates this testimony. In it Bellipanni "accepts the position . . . per the conditions of our conversation." The District has not produced a copy of the posting of the position. East and Bellipanni testified the position was posted, and Myrick interviewed and decided to hire Bellipanni. Thus a genuine dispute of fact exists as to whether Jackson-Hall was treated less favorably than a similarly situated Caucasian male employee.

Once the plaintiff satisfies her prima facie case, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant does so, the burden is shifted back to the plaintiff to rebut the defendant's explanation. *Id.* at 804. Particularly, the plaintiff must show (1) the reason is a pretext for unlawful discrimination, or (2) the "reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411-12

(5th Cir. 2007). Pretext may be proven by an employer's inconsistent explanations of its legitimate nondiscriminatory reason. *Id.* at 415.

For example in *Burrell*, the employer first explained to the EEOC that its decision to hire someone other than Burrell was because the other possessed "more purchasing experience." *Id.* Later, the employer claimed Burrell had insufficient "bottling experience." *Id.* Finally, the employer said the reason was the other person possessed "more purchasing experience in the bottling industry." *Id.* The employer maintained one explanation was merely a clarification of the other. *Id.* Nevertheless, the Fifth Circuit held that this was evidence that the proffered explanation "was suspect because it has not remained the same" and this was "evidence from which a jury could infer that Dr. Pepper's proffered rationale is pretextual." *Id.*

The District argues that the legitimate, nondiscriminatory reason for Jackson-Hall's nonrenewal was in order to meet the requirements of the No Child Left Behind Act. Jackson-Hall maintains the reason is pretextual, because the District has been inconsistent in this claim, it does not explain Bellipanni's seemingly preferential treatment, and the District has not explained how the reason correlates to its decision.

The Court finds there is a genuine issue of fact as to whether the District's proffered explanation is a pretext for race and gender discrimination. There is evidence of an inconsistent explanation from the District. In East's March 29, 2005, letter to Jackson-Hall, he states, "The Gulfport School District has begun a process of reorganization and reduction-in-force to restructure and reallocate the resources of the district." The next day he writes to her, "Your non-renewal is a part of the District's reorganization and reduction-

9

in-force to restructure and reallocate the resources" of the District.

On March 31, at the Superintendent's Forum Symposium, he explains that the District is having a reduction in staff and interviewing new hires, because, "There are positions that we must fill to sustain our accreditation."

On April 19, East wrote Jackson-Hall:

> Your non-renewal was a part of [the District's] reorganization.  Your position as Supervisor of Curriculum & Instruction was a general curriculum administrative position.  Along with certain other positions, it was eliminated, and more specialized curriculum positions and certain other positions were created.  These measures were taken in order better to meet the instructional needs of the children . . . as those needs are changing primarily because of the federal law commonly referred to as the No Child Left Behind Act.

A copy of this letter was later provided to the EEOC.  In his deposition he was asked:

> Q.   Okay.  And, then, why did you determine that reorganization of the school district was necessary?
>
> A.   The central office in Gulfport was a regulatory-run type of environment where the staff was pretty much, here are the rules.  Those were given down to the schools.  We were struggling in several schools academically on test scores, and I felt that moving the central office from a regulatory to more of a support staff with specific experts in the curriculum field were needed to help fix or begin to work on the solutions for the problems that we were having in the district.
>
> Q.   Anything else?
>
> A.   No, ma'am.
>
> Q.   And what criteria did you use, if any, in determining which employees would remain and which employees would receive . . . nonrenewal letters?
>
> . . .
>
> THE WITNESS:   The process is based on the expertise in the central office world, what employees could do to meet the shift from regulatory to support, different academic strengths, working with specific subjects to help us meet

> our No Child Left Behind guidelines, increasing test scores, being able to work with teachers in an expert level.
>
> For example, Ms. Golden, if you have a former math teacher who's a curriculum specialist, it's more likely that she will be able to work with math teachers on specific skills to help us become better in our craft.

Later in his deposition when asked what role the No Child Left Behind Act had on the reorganization in the Central Office, he replied:

> Gulfport School District . . . was struggling in two schools to meet [Adequate Yearly Progress] each year. Actually, one was AYP[,] one was growth model. The concept of No Child Left Behind, individualize–individualizing the recognition of schools that were not performing. *The Gulfport School District didn't want to do it.* We want to make sure we have all our schools perform at the same level.

(emphasis added). Finally, underscoring this apparent inconsistency is the fact that the District's Board minutes make no mention of the No Child Left Behind Act or any other reason in the vote for reorganization. This is evidence from which a reasonable jury could conclude the District's explanation is a disguise for race and gender discrimination.

The District, however, explains that the April 19 letter is merely a clarification of the March letters. The District does not explain the remainder of the apparent inconsistencies. This creates a dispute of fact for the jury.

    II.    <u>FAILURE TO REHIRE</u>

To satisfy her prima facie case of discrimination in her failure to rehire claim, Jackson-Hall must show: (1) she is a member of a protected class, (2) was qualified for the position sought, (3) was not rehired, and (4) a person outside the protected class was hired, or the position remained open and the employer continued to seek applicants from persons of her qualifications. *Wheeler*, 482 F.3d at 412; *McDonnell Douglas*, 411 U.S. at 802. The

11

District argues that this claim fails on the fourth element, because African American women were hired instead of Jackson-Hall.

Jackson-Hall applied for four positions after her nonrenewal: Coordinator of Federal Projects and Community Programs; Director of Instructional Programs, Assessment and Staff Development; West Elementary Principal; and Bayou View Elementary Principal. She also claims a failure to hire as Gulfport High School Administrative Assistant.

### A. COORDINATOR AND DIRECTOR

Two African American women were hired as the Coordinator and Director. Jackson-Hall cannot, as a matter of law, maintain her discrimination claims for loss of these jobs.

### B. PRINCIPALS

A Caucasian man was hired as West's principal, and a Caucasian woman was hired at Bayou View. Thus, Jackson-Hall cannot, as a matter of law, maintain her gender discrimination claim for not being hired at Bayou View. She has satisfied a prima facie case for race and gender discrimination for the West job and race discrimination for the Bayou View position.

Nevertheless, the District argues the prima facie case fails as these positions are not "similarly situated" because they were not "eliminated nor created during the reorganization and neither was a position in the Central Office." There is no such requirement. *Id.* She is not required to show that the job she did not get is similarly situated to the job she lost or others she did not get.

The burden then shifts to the District to articulate a nondiscriminatory reason. The District states that the reasons for not selecting Jackson-Hall as a principal was that the

parent-teacher interview committees recommended other people, the District accepted those recommendations, and those candidates had better qualifications.

The burden is now on Jackson-Hall to rebut these reasons. She has two methods available to prove the reasons given were a pretext for discrimination. *Burrell*, 482 F.3d at 412. She must show (1) the explanation is false or "unworthy of credence," or (2) she is "clearly better qualified" than the persons selected for the position. *Id.* However, Jackson-Hall responds only that she "wasn't selected despite her high qualifications." She does not offer any evidence that these reasons are unworthy of credence or that she was "clearly better qualified." She cannot as a matter of law sustain her claim for loss of these jobs.

Moreover, the evidence corroborates the District's explanation. East's affidavit states the District uses interview committees to hire principals. These consist of teachers, parents, and in the case of Bayou View, a school board member. The Central Office selected Jackson-Hall's application along with others and forwarded them to the interview committees. She was interviewed by both committees. The West committee selected Scott Powell. The Bayou View committee selected Sandra Wilks. East accepted the committees' choices and recommended them to the District Board, which likewise approved them. East stated by affidavit, "In making this decision [he] did not place any emphasis on any candidate's mere length of service."

Further, East's affidavit stated that Powell was superior to Jackson-Hall, because he had experience as both a math teacher and certified administrator in a Level 5 school. Math is one of the subject areas measured for progress under the No Child Left Behind Act. A Level 5 school is the highest designation of academic performance recognized by the

Mississippi Department of Education. He also had experience in DIEBELS, "a research-based program which, under the No Child Left Behind Act offers an approved means of measuring student's literacy." As for Wilks, East's affidavit stated she also had experience as a certified administrator and teacher at a Level 5 school. On the other hand, he stated that Jackson-Hall had no experience in a Level 5 school, no math certification, and no DIEBELS experience.

### C.  ADMINISTRATIVE ASSISTANT

Finally, Jackson-Hall states, "she can prove discrimination upon the failure to rehire claim," because the Administrative Assistant position was filled by Bellipanni. However, it is undisputed that she did not seek this position. Thus this claim fails on the second prong of the *McDonnell Douglas* analysis. In order to show "she was qualified for the position sought," she must show (1) she sought the position, and (2) she was qualified for it. As a matter of law, Jackson-Hall cannot show discrimination for failure to hire her as the Administrative Assistant.

The Court finds no genuine issue of material fact and holds that the District is entitled to judgment as a matter of law.

### DID THE DISTRICT RETALIATE AGAINST JACKSON-HALL FOR A PREVIOUS EEOC SETTLEMENT?

The District argues that Jackson-Hall cannot establish a causal connection between her nonrenewal and her 2003 EEOC settlement. In the alternative, the District maintains Jackson-Hall cannot rebut its nondiscriminatory reason for her nonrenewal.

To establish a prima facie case of retaliation, Jackson-Hall must show (1) she engaged in statutorily protected activity, (2) she suffered an adverse employment action, and

14

(3) there is a causal connection between the protected activity and the adverse employment action. *Mayberry*, 55 F.3d at 1092. The District only denies the final element.

The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002). In fact, to establish a prima facie case, a plaintiff need only make a very minimal showing. *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). For example, a time lapse of four months has been held sufficient to meet the prima facie case on summary judgment. *Evans v. City of Houston*, 246 F.3d 344, 345 (5th Cir. 2001).

In January 2003, Jackson-Hall informed East "that she had a lawsuit pending against the Gulfport School District." He issued her a letter of reprimand and a Conference Record and Plan of Improvement on January 2 and 8. In her sworn interrogatory responses, Jackson-Hall stated she "refused to sign the document due to it being retaliatory." These letters consequently became the subject of the EEOC settlement as well, dated February 11. Jackson-Hall was transferred soon thereafter. On January 3, 2005, East was promoted to Superintendent and relocated to the Central Office. East immediately[1] began working on his "reduction in force" plan. Within three months of being once again her supervisor, she was non-renewed. Viewed in the light most favorable to plaintiff, this evidence establishes her

---

[1] He testified that he could not recall when he began planning the reduction in force, but he "was comfortable with . . . January to March." Elsewhere, he testified that by his February 17 meeting with Bellipanni, he had already planned the reduction in force.

prima facie causal connection.

Once the prima facie case is established, the burden falls to the defendant to articulate a nondiscriminatory reason for the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). "In addition, . . . where there is close timing . . . the employer must offer a 'legitimate, nondiscriminatory reason that explains both the adverse action *and the timing*.'" *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (quoting *Swanson*, 110 F.3d at 1188)). As previously discussed, the District's nondiscriminatory reason was that it needed to meet requirements of the No Child Left Behind Act.

Next, the employee assumes the burden of showing that the reason given was a pretext for retaliation. *Id.* This does involve "but for" causation. *Strong v. Univ. Health Care Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007). In other words, Jackson-Hall must show she would not have suffered the adverse employment action "but for" her protected activity. *Id.* "The timing of the adverse employment action can be a significant, although not necessarily determinative factor." *Mayberry*, 55 F.3d at 1092. "[T]emporal proximity alone is insufficient to prove but for causation." *Strong*, 482 F.3d at 808. However, temporal proximity coupled with evidence that the proffered reason is a pretext will suffice to survive summary judgment. *Shackelford*, 190 F.3d at 409.

There is more evidence than temporal proximity in this case. East was Jackson-Hall's prior supervisor, and his letters of reprimand to her were a subject of the 2003 EEOC settlement. It is undisputed that she informed him of the claim when she refused to sign the

16

letters of reprimand.  As part of the settlement, the letters of reprimand were purged from her file.  Immediately upon becoming her supervisor again, he began to work on the reduction in force, which eliminated Jackson-Hall's position.  In fact, she was the first person he non-renewed.  There is evidence that even though the reduction would also eliminate Bellipanni's position, East had secured a transfer for Bellipanni.  As set forth previously, East and the District gave apparently varying reasons for this reduction.  Moreover, he testified that the No Child Left Behind Act required specialization in the two struggling schools, yet the District opted to make the change in the Central Office instead.  Also, a prior promotion of Bellipanni was another subject of the 2002 EEOC claim, and Jackson-Hall testified that Bellipanni and East were friends.  This is all evidence from which a reasonable jury could find that Jackson-Hall's nonrenewal was retaliatory.

There is also evidence that the District's motivation was not retaliation.  For example, Jackson-Hall was not the only one non-renewed.  She is, however, the only one who did not get rehired, decide to retire, or fail to reapply.  The Court finds there is a genuine issue of material fact as to whether Jackson-Hall's nonrenewal was retaliatory.

DID THE DISTRICT BREACH THE PRIOR EEOC SETTLEMENT AGREEMENT?

Finally, the District moves for summary judgment on Jackson-Hall's breach of contract claim.  Jackson-Hall argues the District breached its settlement agreement as well as its duty of good faith and fair dealing when a loss of funding automatically resulted in her nonrenewal.  The District argues there was no loss of funding.

The applicable clause of the settlement agreement states that the District will:

Enter into a contract with [Jackson-Hall] for the 2003-2004 school year for the

17

> administrative Central Office position of Supervisor of Curriculum & Instruction . . . . *With respect to the position of Supervisor of Curriculum & Instruction, the loss, if any, of funding for the position will not automatically result in [her] separation from employment with the District* and will not result in [her] being ineligible for consideration for any posted position within the District for which [she is] qualified and for which [she applies] under then applicable policy and procedure.

(emphasis added). The parties do not dispute the meaning of this clause. They both agree that where there was a loss of funding for the position of Supervisor of Curriculum & Instruction, this would not "automatically result" in Jackson-Hall's separation of employment. The District does not argue that the reduction in force did not "automatically result" in Jackson-Hall's nonrenewal. The dispute lies on whether or not a loss of funding was the cause for the elimination of this position.

There is evidence that a loss of funding contributed to the elimination of Supervisor of Curriculum & Instruction. Bellipanni testified the entire school district was experiencing budget cuts, and no one was guaranteed a job. East testified the District was experiencing budget cuts everywhere except for the Central Office. In the first two letters from East to Jackson-Hall, she was told that there was a "reduction in force and reallocation of resources."

This is in addition to the previously discussed evidence of other motives advanced by the parties. The Court finds there is a genuine dispute of material fact as to whether a "loss of funding" contributed in whole or in part to the elimination of the position of Supervisor of Curriculum and Instruction.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that for the reasons stated above, the Defendant's Motion for Summary Judgment upon the issue of disparate treatment

in nonrenewal, should be, and is hereby **DENIED.**

  **IT IS FURTHER ORDERED AND ADJUDGED** for the reasons stated above, the Defendant is entitled to judgment as a matter of law on the issue of whether it failed to rehire Plaintiff because of her race and gender.  Therefore, the Defendant's Motion for Summary Judgment regarding failure to rehire should be and is hereby **GRANTED.**

  **IT IS FURTHER ORDERED AND ADJUDGED** for the reasons stated above, the Defendant's Motion for Summary Judgment upon the issue of retaliation should be and is hereby **DENIED.**

  **IT IS FURTHER ORDERED AND ADJUDGED** for the reasons stated above, the Defendant's Motion for Summary Judgment upon the issue of breach of contract should be and is hereby **DENIED.**

  **SO ORDERED AND ADJUDGED** this the 20th day of August, 2007.


        s/ *Louis Guirola, Jr.*
        LOUIS GUIROLA, JR.
        UNITED STATES DISTRICT JUDGE